UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL ANDRE BLANTON, #204537,

                        Plaintiff,

v.

UNKNOWN HISTED, et al.,

                        Defendants.

_____/

Case No. 2:22-cv-32

Hon. Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

## I.    Introduction

This Report and Recommendation (R. & R.) addresses the following:

1. Defendants' motion for summary judgment (ECF No. 57),

2. Plaintiff's motion for an order to defer summary judgment (ECF No. 63), and

3. Plaintiff's motion to strike bad faith affidavits (ECF No. 64).

Plaintiff — state prisoner Paul Andre Blanton — filed suit pursuant to 42 U.S.C. § 1983 on February 17, 2022.  (ECF No. 1.)  In his verified amended complaint, Blanton asserts that while he was incarcerated at the Alger Correctional Facility (LMF) in Munising, Michigan, LMF employees[1] violated his First and Fourteenth

---

[1]    Blanton named the following as Defendants: (1) Food Service Director (FSD) Matthew Histed, (2) Food Steward (FS) Anthony Goetz, (3) FS Jennifer Lester, (4) FS Cresencio Perrin, (5) FS Paula Seymour, (6) FSD Cheri Yager, and (7) FS Unknown Party #1.  (ECF No. 46, PageID.199-201.)  Blanton sues Defendants in their personal capacities.  (*Id.*)

Amendment rights[2] as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA).  (ECF No. 46, PageID.209-217.)  Blanton sues Defendants in their personal capacities.  (*Id.*, PageID.199-201.)

Specifically, Blanton alleges that he is a member of the Jewish faith and has been approved to receive a Kosher diet from the Michigan Department of Corrections (MDOC) since 2006.  (*Id.*, PageID.203.)  Blanton says that after he was transferred to LMF in 2019, he began receiving meals that were cross-contaminated.  (*Id.*, PageID.204.)  And he was deprived of an adequate Passover meal.  (*Id.*)  Blanton says that after he began grieving the issues with his meals, he was deprived of alternative meal items given to other inmates.  (*Id.*, PageID.206.)  Blanton also says that he was threatened with misconduct tickets should he continue to bring the non-Kosher trays to staff's attention.  (*Id.*, PageID.217.)

Defendants[3] now move for summary judgment.  (ECF No. 57.)  As an initial matter, Defendants contend that Blanton cannot establish that Defendants were personally involved in the alleged constitutional violations.  (ECF No. 58, PageID.323-331.)  Defendants then argue that the Court should dismiss Blanton's RLUIPA claim because Blanton sues Defendants in their personal capacities, and the

---

[2]     Blanton references the Eighth Amendment in his request for a declaratory judgment.  (ECF No. 46, PageID.217.)  But Blanton does not otherwise reference the Eighth Amendment or provide any factual allegations suggesting that his Eighth Amendment rights were violated in his amended complaint.  In his initial complaint, Blanton alleged that he received inadequate nutrition at LMF.  (ECF No. 1, PageID.12-14.)  But, per Blanton's request, it is his amended complaint, not his initial complaint, which controls.

[3]     All Defendants other than Unknown Party #1 join in the motion for summary judgment.

RLUIPA does not create a cause of action against individuals in their personal capacities.  (*Id.*, PageID.312-313.)  Moving to Blanton's Equal Protection claim, Defendants contend that Blanton cannot establish that he was treated differently than "all persons similarly situated," or that such disparate treatment was the result of intentional discrimination.  (*Id.*, PageID.315-318.)  Finally, Defendants contend that Blanton was not threatened with a misconduct ticket should he continue to complain about the non-conforming diet; he was threatened with a misconduct ticket should he continue to ignore the proper procedure for lodging those complaints.  (*Id.*, PageID.323.)  And because Blanton cannot establish that Defendants violated his constitutional rights, Defendants assert that they are entitled to qualified immunity. (*Id.*, PageID.331-336.)[4]

Blanton begins his response by conceding that the Court should dismiss his RLUIPA claim.  (ECF No. 62, PageID.474.)  Blanton then argues that while his complaint may not specifically identify which Defendants were personally involved in violating which rights, those Defendants were clearly identified in the grievance records set forth in his original complaint and "incorporated by reference" in his amended complaint.  (*Id.*, PageID.477-478.)  Blanton contends that there are genuine issues of material fact bearing on his First Amendment Free Exercise claim where he has set forth his sincere religious beliefs, provided evidence that his meals were cross-contaminated, and explained how cross-contamination burdens those beliefs.  (*Id.*,

---

[4]    Defendants also argue that Blanton cannot establish an Eighth Amendment claim against them.  (ECF No. 58, PageID.313-315.)  But as detailed above, Blanton's amended complaint does not set forth an Eighth Amendment claim.

PageID.476-482.)  As to his equal protection claim, Blanton asserts that the Kosher menu was provided statewide, but that he was nonetheless deprived of food items on that menu.  (*Id.*, PageID.483.)  Finally, Blanton argues that he was threatened with a misconduct immediately after presenting and complaining of his cross-contaminated food tray, and that the temporal proximity between his complaint and the threat is sufficient evidence of a causal connection.  (*Id.*, PageID.484-485.)

The same day that Blanton responded to Defendants' motion for summary judgment, Blanton filed two motions with the Court.  In the first, Blanton asks the Court to defer ruling on Defendants' motion in accordance with Federal Rule of Civil Procedure 56(d) until he can gain possession of all the grievances he referenced in his original complaint.  (ECF No. 63, PageID.516-216.)  In the second, Blanton asks the Court to strike bad faith affidavits in accordance with Federal Rule of Civil Procedure 56(h), contending that the affidavits of Rabbi James Miller and Matthew Histed touch on matters outside of their personal knowledge.  (ECF No. 64, PageID.520-524.)

For the reasons set forth below, the undersigned respectfully recommends that the Court:

1. Deny Blanton's Rule 56(d) motion (ECF No. 63);

2. Deny Blanton's motion to strike (ECF No. 64);

3. Deny Defendants' motion for summary judgment (ECF No. 57) as to Blanton's First Amendment Free Exercise claim;

4. Grant Defendants' motion for summary judgment as to Blanton's RLUIPA, First Amendment retaliation, and Fourteenth Amendment Equal Protection claims; and

5. Dismiss Unknown Party #1 from this action without prejudice due to Blanton's failure to serve the defendant in accordance with Rule 4(m).

If the Court accepts this recommendation, Blanton's First Amendment Free Exercise claim against Defendants Goetz, Histed, Lester, Perrin, and Seymour will remain.

## II.    Factual Allegations

In his amended complaint, Blanton alleges that he has been incarcerated since 1989 and practicing Judaism since 2005. (ECF No. 46, PageID.202-203.)  In 2006, Blanton applied for and was granted a Kosher diet.  (*Id.*, PageID.203.)  And in 2019, Blanton was transferred to LMF.

Blanton says that as soon as he arrived at LMF, he reported his need for a Kosher diet.  (*Id.*)  He also learned that LMF's Kosher cooks happened to reside in his housing unit.  (*Id.*, PageID.203-204.)   Blanton says that when he initially had issues with his Kosher meals—including for example cross-contamination and improper portions—Blanton would simply address the issues with the cooks directly. (*Id.*, PageID.204.)  But the cooks were eventually replaced by prisoners in another housing unit, such that Blanton could no longer communicate with the Kosher cooks. Shortly thereafter, Blanton said that the issues with his Kosher meals skyrocketed. (*Id.*)  Blanton says that his meals were cross contaminated, that they were served from the non-Kosher food line, and that they did not meet the nutritional

requirements of prisoner meals.  Blanton says that these issues persisted for years.
And during this time, Blanton says that he was not served Passover meals.  (*Id.*)

After becoming frustrated with his non-compliant meals, Blanton says that he
began grieving his meals.  (*Id.*, PageID.205.)  And Blanton says that as he continued
to grieve his meals, Defendants became frustrated with Blanton.  Still, Blanton
received non-compliant foods.  (*Id.*, PageID.206.)  Blanton was also refused
alternative meal items, but when he complained about the refusal, Defendant Histed
would "falsely advance that a particular item . . . was on the tray" even though
Blanton had shown otherwise.  (*Id.*)  And Blanton reports that Defendant Lester
threatened to write Blanton a misconduct ticket for disobeying a direct order if
Blanton complained about his food tray again.  (*Id.*, PageID.216.)

### III.    Blanton's Rule 56(d) Motion (ECF No. 63)

Blanton asks this Court to defer ruling on Defendants' motion for summary
judgment until he has access to the grievances attached to his original complaint.
(ECF No. 63, PageID.517.)  Blanton says that he incorporated those grievances into
his amended complaint by reference, and that they are necessary to oppose
Defendants' assertions that Blanton has not alleged that Defendants were personally
involved in the violation of Blanton's rights.  (*Id.*, PageID.514-515.)  Blanton makes
his request in accordance with Federal Rule of Civil Procedure 56(d).  (*Id.*,
PageID.514.)

Rule 56(d) requires a nonmovant to show "by affidavit or declaration that, for
specified reasons, it cannot present facts essential to justify its opposition."  Fed. R.

Civ. P. 56(d).   Blanton acknowledges as much in his motion.   (ECF No. 63, PageID.514.)   Yet Blanton does not provide the requisite affidavit or declaration. Accordingly, the undersigned recommends that the Court deny Blanton's motion to defer ruling on Defendants' motion for summary judgment.

## IV.   Blanton's Motion to Strike Bad Faith Affidavits (ECF No. 64)

In his second pending motion, Blanton asks the Court to strike two of the affidavits attached to Defendants' motion for summary judgment in accordance with Federal Rule of Civil Procedure 56(h).  (ECF No. 64, PageID.520.)  Rule 56(h) provides that:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Blanton argues that the affidavit of Rabbi James Miller as to the compliance of LMF's religious kitchen area is misleading, because Rabbi Miller is not present in LMF on a day-to-day basis.  (ECF No. 64, PageID.521-522.)  Instead, Rabbi Miller traveled to LMF for the purpose of conducting a single, staged, evaluation of LMF's religious kitchen. And Blanton contends that Defendant Histed perjured himself in his affidavit.  (*Id.*, PageID.522-524.)  Specifically, Blanton says that Defendant Histed references 550 purported photographs of Blanton's meal tray.  But Blanton says that the photographs are not of his meal trays, which the Court could confirm "through a simply in camera inspection of the video from the middle dayroom of the Level II unit, where Plaintiff Blanton held his meals up to the camera."  (*Id.*, PageID.523.)

7

Simply put, the undersigned is not satisfied that the relevant affidavits were submitted in bad faith or solely for delay. *MacLachlan v. Burt*, No. 1:21-cv-461, 2023 WL 6131016, at *7 (W.D. Mich. Aug. 31, 2023) (explaining that "bad faith" involves "egregious" conduct by an attorney), *R. & R. adopted*, No. 1:21-cv-461, 2023 WL 6123266 (W.D. Mich. Sept. 19, 2023).  Blanton either disagrees with the affidavits or believes that providing further context would weaken the strength of the statements therein.  Blanton is free to provide contradictory evidence and further context for the evidence provided by Defendants.  Indeed, that is the purpose of a response brief.  But Blanton's disagreement with Defendants' evidence is not cause for striking the evidence.  Accordingly, the undersigned recommends that the Court deny Blanton's motion to strike.

## V.     Defendants' Motion for Summary Judgment (ECF No. 57)

As set forth above, all Defendants other than Defendant Unknown Party #1 move this Court for summary judgment.

### a.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### b.  First Amendment Free Exercise

Blanton first alleges that Defendants violated his religious rights under the First Amendment by continuously serving him meals that had been cross-contaminated such that they were no longer Kosher.  (ECF No. 46, PageID.209-215.) Blanton more specifically alleges that Defendants would follow Kosher protocols in anticipation of an inspection, but would abandon those protocols as soon as the inspection concluded.  (*Id.*, PageID.209.)  Contrary to Kosher protocols, LMF's regular practices included cooking "Kosher" meals on mainline cooking sheets and in mainly ovens that are not in fact Kosher certified.  Those mainline cooking sheets are then washing alongside the rest of the cooking sheets, in a wash tub that is not certified Kosher.  (*Id.*)  In addition, Blanton says that Defendants and other inmates who worked in the kitchen would use the microwave in the designated Kosher room to microwave non-Kosher food and borrow spices using non-Kosher utensils.  (*Id.*, PageID.210.)

Even setting aside the faulty preparation of his meals, Blanton alleges that the meals were improperly transported to his housing unit.  Blanton says that the meals were transported "on a closed cart, which contained unsealed non-Kosher foods, and

Kosher trays which had obvious exposures to those [non-Kosher] meals." (*Id.*) Because the Kosher meal trays were improperly sealed, they were no longer Kosher by the time they reached Blanton. Blanton says that he brought the non-compliant meal trays to Defendants' attention, but Defendants did nothing to address the issues. (*Id.*, PageID.211.)

Finally, Blanton alleges that his Passover meals improperly included leavened items such as oatmeal and toast, and that the Passover meals were subject to the same cross-contamination outlined above. (*Id.*, PageID.212-215.)

The First Amendment provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion is applicable to the States through the Fourteenth Amendment. *See Cantwell v. Conn.*, 310 U.S. 296, 303 (1940). To establish that this right has been violated, each plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief. *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).

The Supreme Court has observed that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner v. Safley,* 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).

In addressing Blanton's free exercise claim, Defendants rely primarily on the argument that Blanton has not established Defendants' personal involvement in the violation of his free exercise rights.  (*See* ECF No. 58, PageID.323-328.)  According to Defendants, Blanton's verified statements that he repeatedly approached Defendants and informed them of issues with his Kosher trays, paired with his verified statements that the issues were never resolved, are insufficient to impose liability on Defendants.  (*Id.*, PageID.325.)  Defendants emphasize that "it is prisoner cooks who handle every aspect of preparing, cooking, packaging, and transporting [Blanton's] food."  (*Id.*, PageID.326.)

But Defendants also provide verified statements from Rabbi Jason Miller, Defendant Histed, Defendant Lester, and Defendant Seymour.  Rabbi Miller provides that LMF has been under his certification, "with regular onsite supervisory visits" since February of 2020.  (ECF No. 58-4, PageID.384.)  Rabbi Miller attests that the cleaning, cooking, and storage of Kosher food at LMF is entirely consistent with Kosher law.  (*Id.*, PageID.385.)  That includes LMF's practice of retrieving water from outside of the religious kitchen, which did not have running water, to wash the utensils in the religious kitchen.  (*Id.*)

For his part, Defendant Histed attests that the prisoners who work in the religious kitchen at LMF are trained to abide by "strict requirements" associated with

preparing religious meals.  (ECF No. 58-5, PageID.389.)  Histed explains that Blanton was repeatedly instructed to open his meal trays in the presence of a staff member, so that any issues with the tray could be verified by the staff member.  (*Id.*, PageID.390.)  Instead, Blanton would walk away with his tray, open it, and complain about non-compliant meals after the fact.  As such, LMF staff were unable to verify whether the meals were in fact non-compliant at the time they left the kitchen.  (*Id.*) This led kitchen staff to adopt a practice of photographing Blanton's meal trays before they were taken to Blanton, so that Defendant Histed could independently verify compliance or lack thereof.  (*Id.*, PageID.391.)  Histed also explains that there were times in which the main kitchen and the religious kitchen were serving the same items.  Nevertheless, those items were stored, prepared, and distributed separately, in accordance with Kosher law.  (*Id.*)

Defendant Lester concedes that Blanton complained about his meals on numerous occasions.  (ECF No. 58-6, PageID.395.)  But, as indicated by Defendant Histed, Blanton would complain after the tray had already been opened outside of the presence of prison staff.  Defendant Lester attests that on one occasion, she informed Blanton that if he continued to bring Defendant Lester his meal trays after they had been opened, she would issue him a misconduct ticket.  (*Id.*, PageID.396.) Lester explains that the threat was not based on Blanton complaining that his meals were non-compliant, it was based on Blanton's refusal to make his complaints in the prescribed manner.  After staff began photographing Blanton's meal trays, Lester says that she personally confirmed the compliance of Blanton's meals whenever she

worked in the religious kitchen.  (*Id.*)  Defendant Seymour confirms Defendant Histed and Defendant Lester's accounts of Blanton's conduct with religious kitchen staff. (ECF No. 58-7, PageID.399-400.)

Blanton is not without response to these verified statements.   In opposing summary judgment, Blanton provides verified statements from prisoners who worked in the LMF kitchens.  One such prisoner, Todd Tessin, attests that the religious cooks would regularly wash their utensils in the main kitchen to avoid the hassle of retrieving water for the religious kitchen.  (ECF No. 62-2, PageID.490.)  Tessin says that Defendants witnessed these practices and would simply tell the prisoners not to do it "right under" their noses.  Tessin says Defendants never tried to remedy the issue.  (*Id.*)  Furthermore, Tessin provides that cooks from the main kitchen were regularly called to work in the religious kitchen, with no training on handling Kosher foods.  And sometimes cooks in the religious kitchen would simply walk into the main kitchen to retrieve the items common to the religious and non-religious menu.  (*Id.*) Tessin acknowledges that Defendants would occasionally kick prisoner cooks from the main kitchen out of the religious kitchen, but that Defendants did nothing to remedy any cross-contamination after the fact.  (*Id.*, PageID.491.)  Tessin attests that Defendant Histed occasionally walked through the religious kitchen, but that Histed was satisfied as long as the kitchen looked as though it was clean and compliant. (*Id.*)

Blanton also provided a verified statement from prisoner Lee Bradford, who was specifically assigned to work in the religious kitchen.   (ECF No. 62-3, PageID.493.)   Bradford explains that the religious kitchen and the main kitchen

utilized the same spices, and those spices were retrieved using the same containers, rendering them non-Kosher.  Bradford further attests that the doors to the religious kitchen were always kept open, and that workers from the main kitchen would often come into the religious kitchen to borrow supplies, during which time they would handle the containers of Kosher food.  (*Id.*)  Bradford reiterates that while Defendants would occasionally kick the main kitchen workers out of the religious kitchen, they never did anything to address the cross-contamination.  And Bradford confirms that religious kitchen workers often washed their utensils in the main kitchen.   (*Id.*)  According to Bradford, "None of the MDOC staff bothered to take time to properly train new vegan/Kosher cooks . . . nor follow up to see if they were properly handling, prepping, cooking and serving/packaging Kosher food in a way that maintained Kosher status." (*Id.*, PageID.494.)  This led to many new cooks retrieving items from the main kitchen and serving them on the religious meal trays with no intervention. (*Id.*)

Ultimately, the undersigned is not persuaded by Defendants' argument that they lacked personal involvement in any violation of Blanton's First Amendment rights.  Defendants are the state actors responsible for ensuring that Blanton's religious meals comply with his religious beliefs, and they cannot shift that responsibility to the prisoners they supervise.   However, the undersigned acknowledges that Defendants make a compelling case for Blanton creating issues with his meals rather than seeking to remedy them.  To the extent that Defendants took the measures outlined in their verified statements, it is unclear what else they

could have done to ensure that Blanton received his Kosher meals.  But in the undersigned's opinion, that is for the jury to determine; the verified statements provided by Blanton, including the verified statements made in his complaint, are sufficient to create genuine issues of material fact.  The undersigned therefore recommends that the Court deny Defendants' motion for summary judgment as it relates to Blanton's free exercise claims.

### c.  Religious Land Use and Institutionalized Persons Act

In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).  The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

While the phrase "substantial burden" is not defined in the RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007) (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).  Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious

beliefs" or face disciplinary action, then the burden is substantial. *Hobbs*, 574 U.S. at 361 (quoting *Hobby Lobby*, 573 U.S. at 720). The fact that the plaintiff can engage in other forms of religious exercise is not relevant to whether the burden is substantial. *Id.*

As indicated by Defendants, and as conceded by Blanton in his response brief, RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011).[5] The undersigned therefore recommends that the Court dismiss Blanton's RLUIPA claim against Defendants.

### d. First Amendment Retaliation

In addition to asserting that Defendants violated his religious rights under the First Amendment, Blanton alleges that Defendant Lester retaliated against him in violation of the First Amendment by threatening to issue him a misconduct ticket if he continued to bring his meal tray to her to complain.[6] (ECF No. 46, PageID.216-217.)

---

[5]     The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923. Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon v. Lone Star State of Texas*, 560 F.3d at 331.

[6]     During his deposition, Blanton contended that Defendant Seymour made a similar threat. (ECF No. 58-2, PageID.363.) But that claim was not included in Blanton's amended complaint. (*See* ECF No. 46, PageID.216-217.) And Defendants are correct in that Blanton cannot simply list grievance identifiers in his complaint and then rely on the content of those grievances as setting forth or otherwise defining his claims.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.  *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)).  This right extends to grievances that are, in accordance with MDOC policy, raised with staff prior to submitting a formal, written grievance. *Maben v. Thelen*, 887 F.3d 252, 265-66 (6th Cir. 2018) (explaining that it would be "unfair and illogical" to require prisoners to attempt informal resolution of a grievable issue, and then limit the recognition of protected conduct to formal, written grievances).

An adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  Misconduct tickets are often recognized as adverse actions sufficient to support a retaliation claim. *See Brown v. Crowley,* 312 F.3d 782 (6th Cir. 2002) (finding that the issuance

17

of a major misconduct ticket, which subjected the prisoner to a risk of segregation, loss of good time, and a longer term of incarceration, was sufficiently adverse); *Maben v. Thelen*, 887 F.3d 252, 266-267 (6th Cir. 2018) (finding that the issuance of a minor misconduct ticket was sufficiently adverse where the prisoner lost privileges and could have been confined to his cell). Furthermore, "the threat of adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill*, 630 F.3d at 472.

With respect to causation, the Sixth Circuit employs a burden-shifting approach at the summary judgment stage. Under that approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

Blanton contends that he was engaged in protected conduct (complaining about a violation of his free exercise rights), that Defendant Lester engaged in an adverse action (threatening to issue a misconduct ticket) and that the short time between the protected conduct and adverse action is evidence of retaliatory motive. (ECF No. 62, PageID.484-485.) But Lester says that retaliatory motive was not the but-for cause of the adverse action. Specifically, Lester explains that she threatened Blanton with a misconduct ticket if he continued bringing his tray to her because it was contrary

to the way that Blanton was instructed to complain about his religious meal.[7] (ECF No. 58, PageID.323; ECF No. 58-6, PageID.395.)  In other words, Lester issued this threat so that Blanton would complain via the instructed avenue, not so that Blanton would stop engaging in his protected conduct altogether.

Ultimately, Defendant Histed's affidavit confirms that Blanton was instructed to report non-compliant meals by "open[ing] his food containers, in the presence of a food service employee or custody staff, before walking away with the tray" but that Blanton "would not abide by these requests." (ECF No. 58-5, PageID.390.)  Blanton provides no evidence to the contrary.  As such, it is the undersigned's opinion that there are no genuine issues of material fact, that retaliatory motive was not the but-for cause of Defendant Lester's threat to issue Blanton a misconduct ticket, and that Defendants are entitled to summary judgment as to Blanton's First Amendment retaliation claim.

### e.  Equal Protection

Blanton finally alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by treating him disparately as compared to other Jewish prisoners in the MDOC.  (ECF No. 46, PageID.215-216.) Specifically, Blanton says that Defendants subjected him to disparate treatment by

---

[7]    As was Blanton's alleged practice of holding his trays up to the surveillance cameras in an effort to document the non-compliant tray.  Defendant Histed attests that he informed Blanton that showing his meal tray to the surveillance cameras would not preserve his claims.  (ECF No. 58-5, PageID.390.)

allowing for the cross-contamination of his meals and depriving him of alternate meal items such as glazed coffee cake.  (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claim in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012).

In the undersigned's opinion, Blanton has not provided sufficient evidence that he was singled out for disparate treatment.  He says that other, similarly situated Jewish prisoners across the MDOC were offered and provided with substitute items while he was not.  But Blanton does not provide any evidence that on the days he was not given the requested substitute, other Jewish prisoners were.  The fact that the substitute item was on the menu does nothing to establish disparate treatment.  Furthermore, Blanton's allegations with respect to non-compliance with Kosher law

concern issues affecting the entirety of the religious kitchen, and therefore all of the Jewish prisoners served from the kitchen.  Put differently, Blanton has not provided any evidence that he was intentionally singled out for the receipt of non-Kosher meals and the refusal of substitute items.  The undersigned therefore recommends that the Court grant Defendants summary judgment as to Blanton's Fourteenth Amendment Equal Protection claim.

## VI.    Qualified Immunity

In addition to arguing that they did not violate Blanton's constitutional rights, Defendants assert that they are entitled to qualified immunity.  (ECF No. 58, PageID.331-336.)

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As explained by the Court in *Pearson v. Callahan*, a qualified immunity analysis involves two determinations: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court may make these determinations in either order.  *Id.* at 236.

Because it is the undersigned's opinion that there are genuine issues of material fact bearing on whether Defendants violated Blanton's free exercise rights, it is the undersigned's opinion that Defendants are not entitled to qualified immunity at this stage of the case.[8]

## VII.    Failure to Serve

As a final matter, the undersigned addresses the lack of service with respect to Defendant Unknown Party #1.  Federal Rule of Civil Procedure 4(m) sets forth the deadline for service of process.  It provides the following:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Blanton filed his initial complaint on February 17, 2022  (ECF No. 1)  and his amended complaint on November 8, 2023 (ECF No. 46).  Because this Court granted Blanton leave to proceed *in forma pauperis*, this Court was obligated to issue Blanton's summons to USMS for service "once reasonable steps [were] taken to

---

[8]    Defendants argue that even if they violated Blanton's free exercise rights, it was not apparent that "failing to cave to Plaintiff's demands for replacement religious meals where they could not confirm improper preparation because Plaintiff refused to follow instructions, would violate Plaintiff's religious rights."  (ECF No. 335-336.)  But whether Defendants were aware of and acquiesced to non-compliance with Kosher procedures in the religious kitchen is the genuine issue of material fact that remains.  In other words, Defendants attempt to repackage their argument that they did not violate Plaintiff's rights into an argument that the rights were not clearly established.  But the test for qualified immunity has two prongs for a reason; the issues are distinct.

identify for the court the defendants named in the complaint." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process and perform all duties in such cases.").

It is not apparent that Blanton has taken any reasonable steps to identify the unknown party since he filed his complaints.  The undersigned therefore recommends that the Court dismiss Unknown Party #1 without prejudice in accordance with Rule 4(m).

## VIII.  Recommendation

For the reasons set forth below, the undersigned respectfully recommends that the Court:

1. Deny Blanton's Rule 56(d) motion (ECF No 63);

2. Deny Blanton's motion to strike (ECF No. 64);

3. Deny Defendants' motion for summary judgment (ECF No. 57) as to Blanton's First Amendment Free Exercise claim;

4. Grant Defendants' motion for summary judgment as to Blanton's RLUIPA, First Amendment retaliation, and Fourteenth Amendment Equal Protection claims; and

5. Dismiss Unknown Party #1 from this action without prejudice due to Blanton's failure to serve the defendant in accordance with Rule 4(m).

If the Court accepts this recommendation, Blanton's First Amendment Free Exercise claim against Defendants Goetz, Histed, Lester, Perrin, and Seymour will remain.

Dated:   September 24, 2024                    /s/ *Maarten Vermaat*
                                               MAARTEN VERMAAT
                                               U.S. MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).