UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL BLANTON,

    Plaintiff,

v.

MATTHEW HISTED, et al.,

    Defendants.
_____/

Case No. 2:22-cv-32

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff Paul Blanton filed this lawsuit under 42 U.S.C. § 1983 on February 17, 2022. Blanton is a state prisoner who asserts that, while he was incarcerated at the Alger Correctional Facility (LMF) in Munising, Michigan, LMF food services employees violated his First and Fourteenth Amendment rights[1] as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA) (Am. Compl., ECF No. 46 at PageID.209–17).  Blanton brings this action against the following Defendants in their personal capacities: (1) Food Service Director (FSD) Matthew Histed, (2) Food Steward (FS) Anthony Goetz, (3) FS Jennifer Lester, (4) FS Cresencio Perrin, (5) FS Paula Seymour, (6) FSD Cheri Yager, and (7) FS Unknown Party #1 (ECF No. 46 at PageID.199–201).

---

[1] Though Blanton's Amended Complaint also references the Eighth Amendment, as the Magistrate Judge noted, "Blanton does not otherwise reference the Eighth Amendment or provide any factual allegations suggesting that his Eighth Amendment rights were violated in his amended complaint. In his initial complaint, Blanton alleged that he received inadequate nutrition at LMF" (Report and Recommendation, ECF No. 78 at PageID.632 n.2 (citing ECF No. 1 at PageID.12–14)).  Blanton's Amended Complaint controls.

## II.  RELEVANT PROCEDURAL HISTORY

The known Defendants filed a Motion for Summary Judgment (ECF No. 57).  Blanton filed a response in opposition (ECF No. 62), to which Defendants filed a reply (ECF No. 68).  The same day that Blanton filed his response, he filed two motions with the Court.  The first, filed pursuant to Federal Rule of Civil Procedure 56(d), asks that the Court defer ruling on Defendants' motion (ECF No. 63).  The second, filed pursuant to Federal Rule of Civil Procedure 56(h), asks the Court to strike affidavits (ECF No. 64).

These matters were referred to the Magistrate Judge, who issued a Report and Recommendation (R&R), thoroughly setting forth the facts and applicable law and recommending that this Court:

- deny Blanton's Rule 56(d) motion;

- deny Blanton's motion to strike;

- deny Defendants' motion for summary judgment as to Blanton's First Amendment Free Exercise claim;

- grant Defendants' motion for summary judgment as to Blanton's RLUIPA, First Amendment Retaliation, and Fourteenth Amendment Equal Protection claims; and

- dismiss Unknown Party #1 from this action without prejudice (R&R, ECF No. 78 at PageID.634–35).

Thus, having considered the entire record and comprehensively set forth the governing legal standards, the Magistrate Judge's recommendation is to dismiss all claims except for Blanton's First Amendment Free Exercise claims against Defendants Goetz, Histed, Lester, Perrin, and Seymore.

These matters are presently before the Court on objections to the Report and Recommendation filed by Defendants and Blanton.  In accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(3), and this Court's Local Rule 72.3(b), the Court has

performed *de novo* consideration of those portions of the Report and Recommendation to which objections have been made. For the following reasons, the Court adopts the Report and Recommendation in part, disagrees with the Report and Recommendation in part, and issues a Judgment to close this case.

## II. PLAINTIFF'S OBJECTION

### Background

Only Blanton's First Amendment Retaliation claim is relevant to his objection. Blanton, in his First Amendment Retaliation claim, alleges that Defendant Lester retaliated against him in violation of the First Amendment by threatening to issue him a misconduct ticket if he continued to bring his meal tray to her to complain (Am. Compl., ECF No. 46 ¶¶96–99).

As to this claim, Defendants argued in their motion for summary judgment that Blanton "did not suffer an adverse action … capable of deterring a person of ordinary firmness from engaging in future protected conduct" (ECF No. 58 at PageID.321 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). Defendants also argue that "a legitimate warning of potential disciplinary action … cannot establish a causal connection between any adverse action and motivation to retaliate" (*id*.). The Magistrate Judge recommends that the Court grant Defendants' motion as to this claim. Specifically, the Magistrate Judge applied the Sixth Circuit burden-shifting framework for retaliation cases and concluded that Defendant Lester put forth a non-retaliatory motive as the but-for cause of any adverse action and "Blanton provides no evidence to the contrary" (R&R, ECF No. 78 at PageID.748–49). Blanton presents one objection to the Magistrate Judge's analysis and conclusion.

**Objection**

Blanton argues that the Magistrate Judge improperly recommended dismissal of the First Amendment Retaliation claim "based on a credibility determination" of Defendant Lester's statement (ECF No. 87 at PageID.693). Defendants, in their response, question whether Blanton's objection was timely filed (ECF No. 95 at PageID.714–19). Defendants compare the dates reflected on the prison mail log and the disbursements authorization forms Blanton signed to use expedited legal mail (ECF Nos. 95-2 & 95-3) with the dates that Blanton represents he received the Report and Recommendation and mailed his objections. There appears to be a discrepancy, which, Defendants argue, suggests that Blanton's objections were not timely filed despite Blanton's representations to the contrary. Even assuming *arguendo*, however, that Blanton timely filed his objection or that the Court would consider his objection even if it were not timely filed, the objection lacks merit.

The third element of a First Amendment retaliation claim, the Magistrate Judge's application of which Blanton contests in his objection, is "a causal connection between the protected conduct and the adverse action." *Thaddeus-X*, 175 F.3d at 399. "Here the subjective motivation of the defendant[] is at issue." *Id.* The Sixth Circuit uses "a burden-shifting framework to analyze motive for retaliation claims" (R&R, ECF No. 78 at PageID.648 (citing *Thaddeus-X*, 175 F.3d at 399). Under this approach to analyzing retaliation claims:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

Assuming *arguendo* that Blanton met his initial burden, when the burden shifted to Defendants, the Magistrate Judge properly observed that Defendant Lester produced a non-

4

retaliatory motive—attempting to bring Blanton's non-compliant behavior into compliance with staff instructions—for her actions (R&R, ECF No. 78 at PageID.649 (citing Defs.' Br., ECF No. 58 at PageID.323; Lester Aff., ECF No. 58-6 at PageID.395). Specifically, Lester attests that she warned Blanton he would receive a misconduct ticket if, in violation of direct instructions, he continued to open his meal tray away from her presence and only then bring the already-opened tray to her to complain (Lester Aff., ECF No. 58-6 at PageID.395–96). Defendant Histed's affidavit is consistent with this explanation (*see* Histed Aff., ECF No. 58-5 at PageID.390 (referencing the same non-compliance by Blanton)).

Contrary to Blanton's assertion that accepting Lester's statement requires the Court to make a credibility determination, Lester's statement is sufficient under these circumstances to demonstrate a non-retaliatory motive as a matter of law. *See Bey v. Hissong*, No. 21-2883, 2022 WL 3969831 at *1 (6th Cir. Apr. 19, 2022). In a recent prisoner civil rights case, the Sixth Circuit conducted the retaliation burden-shifting analysis on review of a motion for summary judgment. *Id.* The Court of Appeals concluded that an affidavit, which stated that the defendant issued a misconduct ticket in response to the plaintiff's "insolent conduct [that] violated prison rules," showed "an unquestionably legitimate and non-retaliatory reason for issuing [a] misconduct ticket." *Id.* at *5 (citing *Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012); later citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)). Here, as in *Bey*, the government has produced a non-retaliatory motive for Lester's conduct, putting forth specific facts in sworn affidavits that, when Blanton was warned that he would receive a misconduct ticket, he was violating staff instructions. In response, Blanton must "go beyond the pleadings and … designate 'specific facts'" to create a genuine dispute. *Celotex Corp. v. Vatretti*, 477 U.S. 317, 324 (1986)

5

(quoting FED. R. CIV. P. 56(e)).  As the Magistrate Judge observed, he has not done so (R&R, ECF No. 78 at PageID.649).  Plaintiff's objection is thus denied.

### III.  DEFENDANTS' OBJECTIONS

#### Background

Only Blanton's First Amendment Free Exercise claim is relevant to Defendants' objections.  Blanton, in his First Amendment Free Exercise claim, alleges that he is a member of the Jewish faith and that he has been approved to receive a kosher diet from the Michigan Department of Corrections (MDOC) since 2006 (Am. Compl., ECF No. 46 at PageID.203).  Blanton contends that after he was transferred to LMF in 2019, he began receiving meals that were not kosher because (1) they were prepared in a cross-contaminated environment (*id.* at PageID.209) and (2) they were improperly or inadequately packaged, such that they became cross-contaminated in transit to Blanton's unit (*id.* at PageID.210–11).  Blanton also alleges that, during Passover, he received meals that were not kosher for Passover (*id.* at PageID.212–15).

As to this claim, Defendants argued in their motion for summary judgment that Blanton has failed to "make a clear showing that each Defendant was personally involved in the activity that forms the basis of the complaint" (ECF No. 58 at PageID.324).  Defendants also argued that they are entitled to qualified immunity (*id.* at PageID.331).  The Magistrate Judge rejected both arguments.  Based on his review of the record, the Magistrate Judge reasoned that "Defendants are the state actors responsible for ensuring that Blanton's religious meals comply with his religious beliefs, and they cannot shift that responsibility to the prisoners they supervise" (*id.* at PageID.644).  The Magistrate Judge was thus "not persuaded by Defendants' argument that they lacked personal involvement in any violation of Blanton's First Amendment Rights" (*id.*).  Next, after setting forth the two-step framework that governs a qualified immunity analysis, the

6

Magistrate Judge reasoned that "whether Defendants were aware of and acquiesced to non-compliance with Kosher procedures in the religious kitchen is the genuine issue of material fact that remains" (R&R, ECF No. 78 at PageID.652 n.8). Accordingly, the Magistrate Judge concluded that because "there are genuine issues of material fact bearing on whether Defendants violated Blanton's free exercise rights … Defendants are not entitled to qualified immunity at this stage of the case" (ECF No. 78 at PageID.652). Defendants present two objections to the Report and Recommendation.

## Objections

*First*, Defendants argue that the sources the Magistrate Judge considered to establish a genuine issue of material fact were hearsay and improperly sworn statements, and thus they cannot be used to defeat a motion for summary judgment (ECF No. 83 at PageID.663–67). Defendants' objection lacks merit. The Magistrate Judge concluded that there is a genuine issue of material fact—specifically, Defendants' knowledge of and acquiescence to non-compliance with Kosher procedures in the religious kitchen—on the basis of verified statements made in Blanton's complaint and statements from former kitchen workers provided by Blanton in support of his response to Defendants' motion (R&R, ECF No. 78 at PageID.645). Both sources are properly considered.

Regarding the statements made in Blanton's complaint, Defendants argue that these statements were "based entirely off hearsay" (ECF No. 83 at PageID.664). However, as Blanton argues in response, his Complaint contains allegations based on his observation of the manner in which his meal trays were transported, as well as the appearance and contents of his meal trays when he received them (ECF No. 93 at PageID.708). These observations shed light on the operations of the religious kitchen from which the trays originated and are based on Blanton's

7

personal knowledge. Accordingly, Blanton's verified complaint serves as a proper basis for considering whether there remains a genuine issue of material fact. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2010) (a verified complaint, alleging facts, "carries the same weight as would an affidavit for the purposes of summary judgment").

Regarding the statements that Blanton provided, in the form of declarations from prisoners who represent that they worked in the religious kitchen (ECF Nos. 62-2 & 62-3), Defendants argue that the statements "cannot be utilized on a summary-judgment motion" because they are based on "knowledge, belief and ability" (ECF No. 83 at PageID.666 (quoting *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (quotations omitted))).

"Evidence considered at the summary judgment stage need not be 'in a form that would be admissible at trial,' as long as the evidence could ultimately be presented in an admissible form." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 430 (6th Cir. 2018) (quoting *Celotex*, 477 U.S. at 324). However, affidavits must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). It is the law in the Sixth Circuit that "when affidavits based on knowledge and belief are submitted to support or oppose a motion for summary judgment, the district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit." *Ondo*, 795 F.3d at 605.

The two declarations attached to Blanton's response to Defendants' motion both begin with the same recitation, attesting to the truth and accuracy of the information therein "to the best of my knowledge, belief and ability" (ECF Nos. 62-2 & 62-3). The declarants identify themselves as individuals who work in the religious kitchen. Both declarants then recount specific events and general practices relevant to the operation of the religious kitchen. Both declarants' statements

use first-person narration throughout (*see e.g.,* ECF No. 62-2 at PageID.490 ("I myself was instructed to go work in the kosher room without any verbal instruction"), ECF No. 62-3 at PageID.493 ("We would simply go around with a cart and pull out what we needed from the same containers … with non-kosher utensils")). Throughout the declarations, the declarants also make detailed observations that suggest regular, first-hand familiarity with the operations of the religious kitchen (*see e.g.,* ECF No. 62-2 at PageID.490 ("cooks would retrieve non-kosher items off the mainline and bring them into the kosher room to be openly handled and served under the guise of being kosher")). Overall, it appears to the Court that the contents of the declarations are based on personal knowledge. The Court therefore "excuse[s] the affiant[s'] stylistic error" and concludes, in its discretion, that the declarations are properly considered in deciding Defendants' motion. *Ondo*, 795 F.3d at 605.²

Accordingly, Defendants' first objection is properly denied.

**Second**, Defendants reiterate their argument that the remaining Defendants are entitled to qualified immunity (ECF No. 83 at PageID.667–69).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is "not just a defense, but an immunity to suit for money damages." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "When properly applied, it protects all

---

² Defendants also argue that the affidavits of the prisoners who worked in the religious kitchen "failed to identify personal involvement by the Defendants" (ECF No. 83 at PageID.666). That is not so. Todd Tessin's declaration identifies conduct by "stewards like Perrin, Goetz and Seymour" and "The Food Services Director" (ECF No. 62-2). Lee Bradford's declaration identifies conduct by "stewards like Seymour, Perrin, Lester, Goetz and a tall white man whose name I don't recall" (ECF No. 62-3).

but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations omitted).  As the Sixth Circuit has observed, "the qualified immunity doctrine exists partly to protect officials from having to stand trial." *Bishop v. Hackel*, 636 F.3d 757 (6th Cir. 2011).

A defendant is entitled to qualified immunity "unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop*, 636 F.3d at 764 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Court may consider these inquiries in either order. *Pearson*, 555 U.S. at 236.

The Court first considers, in the light most favorable to the plaintiff,[3] the facts relevant to this claim.

Blanton practices Judaism and received meals from a religious kitchen at LMF (ECF No. 46 at PageID.202–03).  The Court notes that this kitchen is separate from the "mainline" (non-religious) kitchen and has been regularly certified by a Rabbi as kosher (ECF Nos. 58-3 & 58-4).  On an unspecified number of occasions, on unspecified dates, with an uncertain degree of knowledge and acquiescence by MDOC staff:

- Blanton received food trays that were not wrapped or that were inadequately wrapped (ECF No. 46 ¶¶ 28 & 60–64).

- Blanton received non-kosher-for-Passover food items in his tray alongside unwrapped kosher-for-Passover food items (*id.* ¶32, ¶81).

- Prisoner workers used food items, such as chopped vegetables, from the mainline kitchen in kosher food (*id.* ¶7; ECF No. 46-3 ¶3; ECF No. 46-4 ¶5).

---

[3] The Court considers, for the purposes of this analysis, facts relevant to this claim that were alleged in the verified Amended Complaint of which Blanton would have personal knowledge and facts stated in the declarations attached to the original Complaint and to Blanton's response to Defendants' motion.

- Prisoner workers cooked kosher food on "mainline" (non-kosher) cooking sheets and pans (ECF No. 46-1 ¶4).

- Prisoner workers in the religious kitchen shared spices and dry goods with the mainline kitchen, meaning both kosher and non-kosher utensils scooped these items out of shared containers (ECF No. 46-2; ECF No. 62-3 ¶2).

- Prisoner workers in the religious kitchen, which has no running water, washed dishes in tubs that are then cleaned in the mainline kitchen (*id.* ¶5; ECF No. 46-2 at PageID.223).[4]

- Prisoner workers washed kosher utensils and pots and pans in the mainline kitchen (ECF no. 46-1 ¶6; ECF No. 46-3 ¶2).

- Prisoner workers and MDOC staff would come into the kosher kitchen and would handle containers and use the microwave (ECF No. 46-1 ¶8; ECF No. 62-3).

- Prisoners working in the religious kitchen received only cursory training (ECF No. 46-1 ¶9; ECF No. 46-2 at PageID.224; ECF No. 46-3; ECF No. 45-4 ¶4).

- Kosher cooks used the mainline oven when the kosher oven was not working in 2019 and 2020 (ECF No. 46-3 ¶4).[5]

The Court turns first to whether Defendants' alleged conduct violated a clearly established First Amendment right. The Supreme Court has held that for a constitutional right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "'Clearly established law' should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case. *Id.* (quoting *Anderson*, *supra*). "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus

---

[4] Defendants attached to their Motion an affidavit from Rabbi Jason A. Miller, who states that the process of washing dishes in tubs filled with external water comports with Jewish dietary law (ECF No. 58-4 ¶4).

[5] Rabbi Miller states that, in the event that the oven in the religious kitchen breaks down, "there are protocols in place to be able to use a non-kosher oven" instead (*id.*).

11

of cases of persuasive authority." *Ortega v. U.S. Immgr. and Customs Enf't*, 737 F.3d 435, 439 (6th Cir. 2013).

Here, LMF maintained a separate kitchen, certified as kosher, to provision food to Blanton and other inmates with religious beliefs pertaining to their diets. However, taking the facts in the light most favorable to Blanton, prisoners working in the kitchen did not always follow the strict requirements of religious dietary law and thus on an unknown number of occasions Blanton received food that was cross-contaminated with non-kosher food. The question for this Court is whether any defendants "acting under similar circumstances" have been held to have violated the First Amendment in the Sixth Circuit such that the right Blanton seeks to assert is clearly established. *White*, 580 U.S. at 79. The Court concludes that the answer is no.

There is no doubt that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). "For the inmate, this is essentially a constitutional right not to eat the offending food item." *Alexander v. Carrick*, 31 F.App'x 176, 179 (6th Cir. 2002). However, this right is not unqualified, and prison policy that "impinges on inmates' constitutional rights … is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This precedent does not clearly establish the right that Blanton wishes to claim here. The instant case involves Defendants' unwillingness or inability to adhere as strictly to the requirements of religious dietary law as Blanton's beliefs would compel. It is not clearly established, in this Circuit, that Defendants' conduct was unlawful. *See Jackson v. Risner*, No. 15-6317, 2017 WL 5712672, at *2 (6th Cir. May 15, 2017) (indicating that the Sixth Circuit "has not directly addressed what restrictions prison officials may place on the provision of a religious diet based on costs or other penological interests").

12

The unpublished Sixth Circuit opinion in *Hermansen v. Thompson*, 678 F.App'x 321 (6th Cir. 2017), is highly instructive.  In *Hermansen*:

> [A Jewish prisoner] was occasionally served items not in strict compliance with kosher requirements (e.g., items of meat and dairy impermissibly served on the same tray; freeze-dried potato slices that he believed were not an approved kosher item).  These instances allegedly resulted in contamination of kitchen space and utensils that must be properly 'kashered,' or made clean, by certification of a competent rabbi.

678 F.App'x 321, 325.  The prisoner sued the Kentucky Department of Corrections for injunctive relief and prison employees in their individual capacity for damages. *Id.* at 323.  The district court, in relevant part, granted summary judgment to the individual defendants on the basis of qualified immunity, and the prisoner appealed. *Id.* at 324.  The Sixth Circuit affirmed.  After discussing the right recognized by *Colvin*, the Sixth Circuit rejected "the notion that it should have been obvious to defendants that their provision of kosher food products to [the plaintiff], prepared in a separate kitchen facility, was nonetheless violative of his First Amendment free exercise rights" because of alleged cross-contamination of cooking utensils. *Id.* at 326.  Critically, the Sixth Circuit observed that "no court had, in authoritative precedent, interpreted the First Amendment as requiring strict compliance" with the kosher food protocol that had been implemented—by the terms of a settlement agreement—at the prison. *Hermansen*, 678 F.App'x 321, 326.

*Hermansen* directly counsels the conclusion that the right Blanton wishes to assert is not clearly established in the Sixth Circuit.  Accordingly, the Court need not consider the first prong of the qualified immunity analysis.  The Court expresses no view on the question of whether a reasonable juror could find that Defendants violated Blanton's First Amendment rights when, notwithstanding their operation of a separate, kosher-certified kitchen, they allegedly allowed Blanton to be served food that did not strictly comport with the requirements of religious dietary law.  Moreover, the Court does not—indeed, cannot—express any view on the question of whether

the operation of the LMF religious kitchen violates RLUIPA or any other law or binding policy, as that question is not before the Court.  Rather, the Court finds that Defendants are immune from Blanton's First Amendment Free Exercise claim at the "clearly established" prong of the qualified immunity analysis.  Thus, the Court declines the Magistrate Judge's recommendation as to Defendants' motion for summary judgment and instead grants Defendants' motion for summary judgment.  Because this Opinion and Order resolves the last pending claim in this action, a Judgment will issue closing this case.  *See* FED. R. CIV. P. 58.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Objection (ECF No. 87) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Objections (ECF No. 83) are DENIED as to the first objection and GRANTED as to the second objection.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 78) is APPROVED and ADOPTED in part, consistent with this Opinion.

**IT IS FURTHER ORDERED** that defendant Unknown Party #1 is DISMISSED.

**IT IS FURTHER ORDERED** that Plaintiff's Rule 56(d) motion (ECF No. 63) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike (ECF No. 64) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 57) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's evidentiary motions (ECF Nos. 71–73 & 81) are DISMISSED as moot.

Dated:  November 13, 2024            /s/ Jane M. Beckering
                                                                                   JANE M. BECKERING
                                                                                  United States District Judge